THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KEVIN SUMNER, Defendant-Appellant.

First District (4th Division)    No. 81-1255

Opinion filed June 10, 1982.

JOHNSON, P. J., dissenting.

James J. Doherty, Public Defender, of Chicago (Thomas F. Bomba and John Kalnins, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and Anthony John Calabrese, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant Kevin Sumner was charged with deceptive practices (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)) for knowingly issuing a check in an amount greater than his account balance. Following a bench trial in the circuit court of Cook County, he was found guilty, sentenced to one year's probation, and fined $310. On appeal, Sumner contends that because the prosecution failed to contradict any part of his affirmative defense or to impeach his credibility, the State did not prove beyond a reasonable doubt that, at the time of the transaction, he had the statutorily required intent to defraud.

Our review of the record compels us to conclude that the State has not met its burden of proof. Accordingly, we reverse the judgment of conviction of the trial court.

The corroborated facts pertinent to this appeal show that on April 30, 1980, Kevin Sumner contracted with Fanning Cadillac (Fanning) to purchase a 1980 Coupe de Ville at a listed cash price of $15,581.52. As consideration, he traded in a 1978 Mercury Cougar, paid $700 cash, wrote a check for $2,100, and signed a financing agreement to cover the balance of the purchase price, approximately $18,000, thus promising to pay a total of $21,659 for the car. On April 30, 1980, when Sumner issued the $2,100 check, he knew he did not have sufficient funds in his account to cover it.

On May 2, 1980, following a discussion with his brother concerning the finance and insurance charges that had been added to the cash price of the car, Sumner asked Fanning to take back the car and cancel the deal. Fanning refused. On May 29, 1980, when Sumner's check for $2,100 was presented at his bank for payment, his account contained a balance of $50.15; the check was stamped "Insufficient Funds" and returned to the Fanning dealership. Thereafter, based on Fanning's complaint, the subject criminal proceedings charging Sumner with a deceptive practice were instituted.[1]

The pertinent statute (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)) reads as follows:

---

[1] The contract Sumner signed specifically stated that the seller (Fanning) reserved a security interest in the car, as provided by the Uniform Commercial Code. Section 9—503 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—503) states that in a case of buyer default, the seller may repossess the collateral without judicial process if no breach of the peace results. If a breach of the peace is likely, a properly instituted civil action is the appropriate remedy. In effect, what Fanning has done is force the State to act as its collection agent.

"B. General Deception

A person commits a deceptive practice when, with intent to defraud:

＊ ＊ ＊

(d) with intent to obtain control over property or to pay for property, ＊ ＊ ＊ he issues or delivers a check or other order upon a ＊ ＊ ＊ depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud;
＊ ＊ ＊."

The only issue presented on appeal is whether Sumner was proved guilty of a deceptive practice beyond a reasonable doubt. The State contends that because Sumner knew on both the date of issuance and the date of presentment of the $2,100 check that his account contained insufficient funds, he was guilty of a statutorily defined deceptive practice and therefore properly convicted by the trial court. The State maintains that Sumner's conviction should be affirmed because his own testimony and bank records supported each other in showing that he did not have adequate funds on deposit in his checking account on either the date of issuance or the date of presentment; therefore, the prosecution asserts it has presented all the evidence necessary to fulfill the statutory requirements for a *prima facie* case of deceptive practices.

Sumner, while agreeing that the State presented enough evidence to establish a statutorily adequate *prima facie* case, argues that his own testimony was legally sufficient to establish a reasonable defense showing that he lacked the necessary intent to defraud. Therefore, Sumner claims, the presumption of guilt established by the State's *prima facie* case was rebutted, and the prosecution was required to refute his defense by presenting convincing proof that Sumner had the requisite intent to defraud when he issued the check in question. We agree with Sumner.

■■ The language of the deceptive practices statute (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)) clearly states that a deceptive practice is a specific intent crime, that is, a person who writes and delivers a check knowing the account balance is deficient or that the bank will not pay the check when presented is guilty of a deceptive practice only if the check is written with the specific intent to defraud the recipient. Writing a check on insufficient funds but without that specific intent may violate some other law, but it does not constitute the crime here charged.

In his defense, Sumner testified that although at the time he wrote the

check he knew his account balance was insufficient, he intended to and did deposit enough money the next day to make up the deficiency. However, after reconsidering his purchase in light of the finance charges and unsuccessfully attempting to rescind the contract with Fanning, he withdrew the money he had deposited in order to forestall Fanning from cashing his check. He therefore contends that he did not violate the statute because he had no intent to defraud at the time he wrote the check.

■■ We initially note that the offense of deceptive practices is complete at the moment of making, delivering, or uttering the check. (*People v. Cundiff* (1973), 16 Ill. App. 3d 267, 305 N.E.2d 735.) Consequently, if the State does not prove that all elements of the crime existed at that moment, then the defendant may not be found guilty of the crime charged. The defendant here has presented testimony which, if believed by the finder of fact, would negate the existence of one essential element, the specific intent to defraud. "[The statute] places a burden on the State to prove the element of 'intent to defraud' beyond a reasonable doubt. This section also requires the State to prove the check was drawn while the drawer knew it would not be paid by the depository. Failure to have sufficient funds in the depository when the check is issued is prima facie evidence the offender knows it will not be paid, but is *not* prima facie evidence of intent to defraud." (Emphasis added.) *People v. Dennis* (1976), 43 Ill. App. 3d 518, 520-21, 57 N.E.2d 563, 565.

■■ It is clear, therefore, that once the defendant presents a reasonable, probable defense, the fundamental presumption of innocence until proven guilty precludes the trier of fact from simply ignoring the exculpatory testimony. (*People v. Harling* (1975), 29 Ill. App. 3d 1053, 331 N.E.2d 653.) We find it significant that the prosecution introduced into evidence bank records carefully selected to show Sumner's balance five days before the check was issued (the closing date for March) and his balance over a month later after the check was presented for payment (up to the closing date for May), but nothing in between. The bank records covering that crucial month would have proved conclusively whether or not Sumner had made the deposit to his checking account as he claimed.

■■ It was not Sumner's duty to present his deposit slip dated April 1, 1980, but the State's duty to prove him guilty beyond a reasonable doubt. Once Sumner presented his defense, evidence of lack of intent to defraud, the State had the additional burden of proving him guilty on that issue as well. (*People v. Harling* (1975), 29 Ill. App. 3d 1053, 331 N.E.2d 653.) The State's evidence, displaying as it does a conspicuous gap covering the specific dates on which Sumner testified he deposited and then withdrew the money from his checking account, obviously does nothing to rebut the defense. Sumner's defense, therefore, stands uncontradicted. "Where acts

or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted." *People v. Everhart* (1974), 22 Ill. App. 3d 727, 732, 317 N.E.2d 720, 724.

Additionally, we note another significant fact, ignored by the State, which tends to negate the existence of specific intent to defraud. Unlike defendants in most cases prosecuted under the deceptive practices statute, Sumner had tendered other value for the purchased car in addition to the dishonored check. The fact that Sumner traded in his two-year-old car as well as paying over a substantial amount of cash tends to support his defense that he had no intent to defraud at the time he issued the check.

■■ It is clear that the intent to defraud is a distinctly different mental state from knowledge that the check will not be paid. An example of the difference is the writing of a check for more than the account balance but with the intent to deposit funds to cover it. "In such cases there is no intent to defraud, nor can it be inferred from the issuer's knowledge that his check is not good. Similarly, one cannot infer that because payment on a check was later stopped, the drawer issued it intending to defraud the payee." *People v. Ogunsola* (1981), 87 Ill. 2d 216, 221, 429 N.E.2d 861, 864.

Although it is true that the findings of the trier of fact, including conclusions concerning the credibility of witnesses, are entitled to "great weight" (*People v. Williams* (1976), 65 Ill. 2d 258, 268, 357 N.E.2d 525, 530), "if there is any reasonable hypothesis arising from the evidence consistent with the innocence of the defendant it must be accepted." *People v. Dennis* (1976), 43 Ill. App. 3d 518, 521, 357 N.E.2d 563, 565.

In light of all the above, the judgment of the trial court is reversed.

Reversed.

ROMITI, J., concurs.

PRESIDING JUSTICE JOHNSON, dissenting:
I would affirm the decision of the trial court. The statute defining deceptive practices provides that failure to have sufficient funds when the check is delivered is *prima facie* evidence that the offender knows it will not be paid by the depository, and he has intent to defraud (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)). I think the prosecution proved beyond a reasonable doubt that at the time of the transaction defendant had the statutorily required intent to defraud.

The record revealed that when Sumner issued the $2,100 check he knew he did not have sufficient funds in his account to cover it. Further, when the check was presented for payment, it was stamped "Insufficient Funds" and returned to Fanning. Sumner argues that his own testimony

was legally sufficient to establish a reasonable defense showing he lacked the necessary intent to defraud, thus, requiring the State to refute his defense. I disagree with defendant's analysis.

The question of whether or not a defendant has an intent to defraud is one for the trier of fact to determine upon consideration of all the circumstances in the case—not alone on defendant's declaration of his intent. (*People v. Lundblade* (1981), 95 Ill. App. 3d 474, 478, 420 N.E.2d 784, 786.) The testimony thus presented a conflict between the State's evidence and defendant's declaration which was the function of the judge to resolve, having an opportunity to observe the witnesses and their credibility. The judge obviously chose not to believe the testimony of defendant.

I believe the State was not required to show that defendant deposited funds in the bank but later withdrew them. The trier of fact found against defendant, and I would affirm his finding.