THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLEN BORMET, Defendant-Appellant.

First District (5th Division)   No. 84—0587

Opinion filed March 31, 1986.

Gray, Kleczek & Kielian, P.C., of Joliet (Robert Morel Gray, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Karen C. Wirth, Assistant State's Attorneys.

JUSTICE LORENZ delivered the opinion of the court:

Defendant Allen Bormet was found guilty of a deceptive practice (Ill. Rev. Stat. 1983, ch. 38, par. 17—1(B)(d)) for knowingly issuing a check without sufficient funds. Following a bench trial defendant was sentenced to a six-month term of conditional discharge and ordered to make restitution in the amount of $3,661.94. Defendant appeals, contending that: (1) he was not proved guilty beyond a reasonable doubt, (2) the trial court did not properly evaluate evidence that the check in question was in payment for previously delivered goods, (3) the complaint was fatally defective because it alleged the offense in the disjunctive.

We reverse.

At trial the complainant, Bernard Markel, owner of Consolidated Supply Company, testified that on August 4, 1983, defendant, president of A & B Plumbing Company, came to Markel's place of business and purchased plumbing supplies with a check made out to Consolidated Supply for $3,661.94. Markel further testified that he then gave defendant the plumbing supplies and helped load the supplies onto defendant's truck. Thereafter Markel attempted to deposit defendant's check into his account on two separate occasions, but on both occasions the check was returned for insufficient funds. Bank notations on that

check, which was introduced into evidence, indicate that it was returned on August 9 and August 16, 1983. Markel also testified that he had attempted to contact defendant by telephone and by registered letter, which was returned. At the time of trial defendant had still not paid him.

Defendant testified that on August 4 when he issued the check, which was for previously received goods, the account contained over $10,000. However, on August 5, a check for $4,144.04 that he had post-dated for September 1 was cashed prematurely. He also testified that on August 23 there were sufficient funds in the account to cover the check to Consolidated.

During the trial the parties stipulated to the State's admission of defendant's corporate bank statement for the month of August. The statement showed that defendant had had sufficient funds ($10,118.06) to cover the Markel check on August 4, 1983, the date on which the check was delivered. In addition the statement indicated that a check in the amount of $4,144.04 was paid by defendant's bank on August 5, 1983. On that day the account still had sufficient funds. Finally, the statement showed that on August 23 the account again had sufficient funds.

The trial court found Markel's testimony to be credible with regard to the delivery of the plumbing supplies. In addition, the court indicated that defendant's subsequent refusal to pay Markel reinforced the inference that, at the time in question, defendant had not intended to pay Markel. The court thereupon found defendant guilty of a deceptive practice.

OPINION

■ We first consider defendant's contention that he was not proved guilty beyond a reasonable doubt. In a criminal prosecution the State has the burden of proving beyond a reasonable doubt all material and essential facts constituting the crime. The burden never shifts to the accused but remains the responsibility of the prosecution throughout the trial. (*People v. Weinstein* (1966), 35 Ill. 2d 462, 220 N.E.2d 432.) It is not for defendant to establish his innocence but for the State to establish his guilt. (*People v. Benson* (1960), 19 Ill. 2d 50, 61, 166 N.E.2d 80; *People v. Magnafichi* (1956), 9 Ill. 2d 169, 137 N.E.2d 256.) In a deceptive practice prosecution, the State has the burden of proving beyond a reasonable doubt (1) that defendant made, drew, issued, or delivered a check, draft, or order for payment; (2) that defendant obtained thereby from another money, personal property, or other valuable thing; (3) that defendant knew at that time that his account was

insufficient to pay the check, draft, or order in question; and (4) that defendant acted with the intent to defraud. (*People v. Cundiff* (1973), 16 Ill. App. 3d 267, 305 N.E.2d 735.) In this cause, it is undisputed that when defendant issued and delivered his check there were sufficient funds in his account. But the State relies on the presumption created by the deceptive practice statute concerning a subsequently dishonored check as evidence of defendant's intent to defraud.

The Deceptive Practice Act states in pertinent part:

"(B) General Deception

A person commits a deceptive practice when, with intent to defraud:

\* \* \*

(d) With intent to obtain control over property or to pay for property \*\*\* he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days part, *is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud;* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 17—1(B)(d).)

The last sentence of section 17—1(B)(d) can be construed to mean that the dishonoring of a check twice within seven or more days is sufficient to submit the issue of intent to defraud to the trier of fact or, in the alternative, that the same facts create a presumption of intent to defraud, thereby relieving the State of its burden of proof as to that element. (*People v. Gray* (1981), 99 Ill. App. 3d 851, 426 N.E.2d 290. See also *People v. Sumner* (1982), 107 Ill. App. 3d 368, 437 N.E.2d 786 (Johnson, J., dissenting); E. Cleary & M. Graham, Illinois Evidence, sec. 304.1 (4th ed. 1984) (*"prima facie* evidence" allowing introduction of evidence to trier of fact).) The State relies on the premise that the statute creates a presumption of intent as a basis for defendant's conviction. We, therefore, must determine if the statute does in fact create a presumption of intent on which the State may rely.

In *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965, the supreme court addressed the issue of presumptions in jury instructions in criminal cases. There the court discussed both mandatory presumptions and permissible inferences. In the former instance, the fact finder must infer the presumed fact if the State proves certain predicate facts. If the mandatory presumption is conclusive or

irrebuttable, the presumed element is removed from the case once the State has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case, but nevertheless requires the fact finder to find the presumed element unless the defendant persuades the fact finder that such a finding is unwarranted. The supreme court ruled that, in a criminal prosecution, both types of mandatory presumptions were unconstitutional since they relieved the State of the burden of proof beyond a reasonable doubt and violated the due process clause by impermissibly shifting the burden of persuasion to the criminal defendant.

Here, the State argues that the *prima facie* language of the statute creates a presumption as to defendant's intent to defraud. The *Francis* decision however, indicates that, in a criminal prosecution, any mandatory presumption, whether conclusive or rebuttable, is a due process violation which impermissibly relieves the State of its burden of proving all essential elements of a crime beyond a reasonable doubt. Since the intent to defraud is an essential element of deceptive practice, the statute cannot create a mandatory presumption regarding defendant's intent to defraud. The statute may, however, create a permissible inference of guilt if the inferred conclusion meets certain standards.

In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, the Illinois Supreme Court ruled that an inference of guilt may be drawn from the proven facts if: (1) there is a rational connection between the inferred fact and the proven fact; (2) the inferred fact more likely than not flows from the proven fact; and (3) the inference is supported by corroborating evidence. Here we agree that there is a rational connection between the insufficiency of funds at presentment and a party's intent to defraud. We are less certain as to whether the intent to defraud more likely than not flows from the fact that a check has been dishonored. We need not determine this issue however, because we find that the State has failed to support the inference with any corroborating evidence of defendant's intent to defraud.

■ The State argues that the trial court relied on defendant's subsequent failure to pay Markel as corroboration of defendant's intent to defraud. However, the intent to defraud, as an essential element of deceptive practice, must be present at the moment a check is issued, drawn, made or delivered. (*People v. Sumner* (1982), 107 Ill. App. 3d 368, 437 N.E.2d 786.) Thus, the requisite intent cannot be inferred from defendant's subsequent acts, and it is immaterial whether payment or restitution is subsequently made. (*People v. Cundiff* (1973), 16 Ill. App. 3d 267, 305 N.E.2d 735; see *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861 (intent to defraud cannot be inferred from fact

defendant later stopped payment on check).) Defendant's subsequent actions, therefore, cannot be used as corroborating evidence of his intent to defraud when the check was delivered. Because the State put forth no other evidence of intent, we find that the inference created by the statute was not supported by the corroborating evidence required by the supreme court in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151. Thus, the inference, by itself, cannot support the conclusion that defendant intended to defraud Markel. We also note that defendant's account of the prematurely honored check was not contradicted and in fact was corroborated by his bank records.

In sum, we hold that the deceptive practice statute does not create either a conclusive or a rebuttable presumption as to defendant's intent to defraud. We base our holding on the rule articulated in *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965, that any mandatory presumption would relieve the State of the burden of proving intent to defraud beyond a reasonable doubt, and would deny defendant's due process rights by impermissibly shifting the burden of persuasion to the accused. We further hold that the *prima facie* language of the statute may be construed to indicate the submissibility of evidence to the trier of fact and may create a permissible inference on the issue of intent to defraud. In the latter instance, however, the inference may be drawn by the trier of fact only when the proven facts meets the standards set forth in both *Francis* and *Housby*. Since the inference in the present case does not meet these standards, it is insufficient to support any conclusion of defendant's intent to defraud. We therefore find that the State had failed to meet its burden of proof as to all elements of the crime in question. On this basis, we reverse the conviction below.

In light of our decision, we decline to discuss the remaining contentions raised by defendant. Accordingly, defendant's conviction is reversed.

Reversed.

MEJDA, P.J.,* and PINCHAM, J., concur.

---

*This opinion was concurred in prior to the retirement of Presiding Justice James J. Mejda from the court.